No. 23-3019

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

---

JOANN CHASE, *et al.*,

*Plaintiffs – Appellants*,

v.

ANDEAVOR LOGISTICS, L.P., *et al.*,

*Defendants – Appellee*s.

On Appeal from the United States District Court
for the District of North Dakota
Case No. 1:19-cv-00143-DMT
Hon. Daniel M. Traynor

---

### APPELLANTS' OPENING BRIEF

---

Dustin T. Greene
KILPATRICK TOWNSEND &
STOCKTON LLP
1001 W. 4th Street
Winston-Salem, NC 27101
Telephone: (336) 607-7300
Email: dgreene@ktslaw.com

Keith M. Harper
Leonard R. Powell
Krystalyn Kinsel
JENNER & BLOCK LLP
1099 New York Ave. NW
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Email: kharper@jenner.com

*Counsel for Appellants*

## SUMMARY OF THE CASE

This case concerns a trespass on Indian lands. Defendants-Appellees (collectively, "Andeavor") obtained an easement for an oil pipeline that runs across Indian land held in trust by the United States for the benefit of Plaintiffs-Appellants (the "Individual Landowners"). In 2013, that easement expired. Nevertheless, today—over a decade later—the pipeline remains on the trust lands. The Individual Landowners seek to vindicate their rights as the beneficial landowners through claims for trespass, breach of easement, and unjust enrichment. Initially, the district court dismissed this case for failure to exhaust remedies, but this Court reversed.

On remand, the district court dismissed for failure to state a claim. It held that the federal common law does not provide a cause of action for trespass on trust lands belonging to individual Indians and that the Individual Landowners cannot assert a breach-of-easement claim because they are not parties to the easement over their lands. It also denied the Individual Landowners' motion to intervene in a related case where the United States asserts a trespass claim against Andeavor on behalf of the Individual Landowners, and it ignored their request to consolidate the two cases.

The district court erred because federal law recognizes individual Indians' ability to assert these federal claims, and because intervention or consolidation is required and appropriate. Appellants request that this Court grant 30 minutes of oral argument to address these important federal-law questions.

i

# TABLE OF CONTENTS

SUMMARY OF THE CASE.................................................................i

TABLE OF AUTHORITIES ............................................................v

JURISDICTIONAL STATEMENT ...................................................1

STATEMENT OF ISSUES ...............................................................2

INTRODUCTION .............................................................................3

STATEMENT OF THE CASE ..........................................................4

    A.    Andeavor's Trespass .............................................................4

    B.    The First Dismissal And Subsequent Reversal ....................5

    C.    The *Tesoro* Suit ...................................................................6

    D.    The Second Dismissal ..........................................................7

STANDARD OF REVIEW ................................................................8

SUMMARY OF ARGUMENT ..........................................................8

ARGUMENT ...................................................................................10

I.    THE INDIVIDUAL LANDOWNERS CAN BRING A FEDERAL
TRESPASS CLAIM ................................................................10

    A.    The Federal Common Law Provides A Cause Of Action For
Trespass On Indian Trust Lands..........................................11

    B.    The United States Agrees That A Common Law Action Exists,
And *Poafpybitty* Establishes That The Individual Landowners
May Assert That Claim On Their Own Behalf ....................15

    C.    Absent A Federal Claim, The Individual Landowners Lack
Any Federal Or State Court Remedy ..................................18

    D.    Federal Common Law Trespass Claims Are Not Limited To
Tribal Assertions of Aboriginal Title, Which Is Weaker Than
Trust Title ...........................................................................20

Appellate Case: 23-3019    Page: 3    Date Filed: 01/12/2024    Entry ID: 5353142

II.    THE INDIVIDUAL LANDOWNERS CAN BRING A FEDERAL ACTION FOR BREACH OF THE 1993 EASEMENT ................................25

   A.    The Breach-Of-Easement Claim Arises Under And Is Governed By Federal Law ................................................26

   B.    The Individual Landowners Are Entitled To Sue Under *Poafpybitty*..................................................................28

   C.    The Individual Landowners Are Also Entitled To Sue As Third-Party Beneficiaries To The 1993 Easement .............................29

   D.    The United States Is Not An Indispensable Party To The Breach-of-Easement Claim, And Can Be Joined Regardless .............34

       1.    The Individual Landowners' Breach-Of-Easement Claim Against Andeavor Does Not Threaten The United States' Interests ............................................35

       2.    Were It Required, The United States Could Be Joined ............39

       3.    Even If The United States Were A Required Party And Could Not Be Joined, The Rule 19(b) Factors Would Require Allowing This Case To Proceed ................................40

III.   THE INDIVIDUAL LANDOWNERS CAN BRING A CLAIM FOR UNJUST ENRICHMENT ....................................................41

IV.    THE DISTRICT COURT ERRED IN DENYING INTERVENTION AND IGNORING CONSOLIDATION ........................................43

   A.    The Individual Landowners Are Entitled To Intervene In *Tesoro* ................................................................43

       1.    The Individual Landowners Have A Recognized Interest That May Be Impaired ..................................44

       2.    The United States Does Not Adequately Protect The Individual Landowners' Interests ............................45

           a.    No Presumption Of Adequacy Applies ..........................45

           b.    The Individual Landowners Have Met Any Applicable Burden ..........................................48

Appellate Case: 23-3019     Page: 4     Date Filed: 01/12/2024 Entry ID: 5353142

B.    The District Court Abused Its Discretion In Denying Permissive Intervention .................................................................49

C.    The District Court Abused Its Discretion And Prevented Meaningful Appellate Review By Failing To Address Consolidation............................................................................52

CONCLUSION .........................................................................................53

Appellate Case: 23-3019    Page: 5    Date Filed: 01/12/2024 Entry ID: 5353142

# TABLE OF AUTHORITIES

**CASES**

*Agua Caliente Band of Mission Indians v. Riverside County*, 442 F.2d 1184 (9th Cir. 1971)................................................................16

*Alaska Department of Public Works v. Agli*, 472 F. Supp. 70 (D. Alaska 1979) ................................................................................19

*All Mission Indians Housing Authority v. Silvas*, 680 F. Supp. 330 (C.D. Cal. 1987)................................................................20

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) .............................................48

*Arizona Public Service Co. v. Aspaas*, 77 F.3d 1128 (9th Cir. 1995) ....................27

*Arizona v. California*, 460 U.S. 605 (1983), *decision supplemented*, 466 U.S. 144 (1984)................................................2, 50, 51, 52

*Audio Odyssey, Ltd. v. United States*, 255 F.3d 512 (8th Cir. 2001)................29, 30

*Bad River Band of Lake Superior Tribe of Chippewa Indians of Bad River Reservation v. Enbridge Energy Co.*, 626 F. Supp. 3d 1030 (W.D. Wis. 2022)................................................................22

*Barber v. Simpson*, No. 05-CV-2326, 2006 WL 1867643 (E.D. Cal. July 6, 2006), *aff'd*, 286 F. App'x 969 (9th Cir. 2008) .......................................39

*Begay v. Public Service Co. of New Mexico*, 710 F. Supp. 2d 1161 (D.N.M. 2010)................................................................12

*Bettor Racing, Inc. v. NIGC*, No. CIV. 13-4051, 2013 WL 5954418 (D.S.D. Nov. 6, 2013) ................................................47, 49

*Bird Bear v. McLean County*, 513 F.2d 190 (8th Cir. 1975)....................13, 35, 37

*Bledsoe v. United States*, 349 F.2d 605 (10th Cir. 1965) .......................................11

*Bowen v. United States Postal Service*, 459 U.S. 212 (1983) ................................30

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009)..............................8

*Busby School of Northern Cheyenne Tribe v. United States*, 8 Cl. Ct. 596 (1985)................................................................30, 33

v

*Buzzard v. Oklahoma Tax Commission*, 992 F.2d 1073 (10th Cir. 1993) ...................................................................................24

*Byran v. Itasca County*, 426 U.S. 373 (1976)...........................................19

*Chase v. Andeavor Logistics, L.P.*, 12 F.4th 864 (8th Cir. 2021) ...................................................... 5, 6, 10, 15, 17, 24, 36, 38

*Cheyenne River Sioux Tribe of Indians v. United States*, 338 F.2d 906 (8th Cir. 1964).............................................................36, 38

*Choctaw & Chickasaw Nations v. Seitz*, 193 F.2d 456 (10th Cir. 1951) ....17, 38, 39

*Coffey v. Commissioner*, 663 F.3d 947 (8th Cir. 2011) ......................................8, 50

*Comstock Oil & Gas Inc. v. Alabama & Coushatta Indian Tribes of Texas*, 261 F.3d 567 (5th Cir. 2001) .................................................27

*Davilla v. Enable Midstream Partners, L.P.*, No. CIV-15-1262-M, 2016 WL 4440240 (W.D. Okla. Aug. 19, 2016) ..........................................35, 37

*Davilla v. Enable Midstream Partners, L.P.*, 913 F.3d 959 (10th Cir. 2019) ..................................................13, 14, 41

*DeShane v. Deere & Co.*, 726 F.2d 443 (8th Cir. 1984) ........................................53

*Dine Citizens Against Ruining Our Environment v. BIA*, 932 F.3d 843 (9th Cir. 2019)..................................................... 2, 46-47

*Eagle Bear, Inc. v. Blackfeet Indian Nation*, No. CV-21-88, No. 2022 WL 4465000 (D. Mont. Sept. 26, 2022).............................................27

*Enterprise Bank v. Saettele*, 21 F.3d 233 (8th Cir. 1994)...................................8, 52

*Fettig v. Fox*, No. 19-cv-096, 2020 WL 9848691 (D.N.D. Nov. 16, 2020), *report and recommendation adopted by* 2020 WL 9848706 (D.N.D. Dec. 3, 2020)..........................................13

*Gaming Corp. of America v. Dorsey & Whitney*, 88 F.3d 536 (8th Cir. 1996) ...................................................................32

*Gaming World International, Ltd. v. White Earth Band of Chippewa Indians*, 317 F.3d 840 (8th Cir. 2003) ..........................................26, 28

vi

*Gila River Indian Community v. Winkelman*, No. CV 05-1934, 2006 WL 1418079 (D. Ariz. May 22, 2006) ...............................................41

*Gilmore v. Weatherford*, 694 F.3d 1160 (10th Cir. 2012) .......................................14

*Grondal v. United States*, No. 09-cv-18, 2021 WL 1962563 (E.D. Wash. May 17, 2021) .......................................................13

*Hammond v. County of Madera*, 859 F.2d 797 (9th Cir. 1988), *abrogated on other grounds as noted in L.W. v. Grubbs*, 92 F.3d 894 (9th Cir. 1996) ...................................................13

*Hargrove v. Underwriters at Lloyd's, London*, 937 F. Supp. 595 (S.D. Tex. 1996) ...........................................................38

*Hebah v. United States*, 428 F.2d 1334 (Ct. Cl. 1970) ...........................2, 29, 32, 33

*Heckman v. United States*, 224 U.S. 413 (1912) .....................................................18

*Holbrook v. Pitt*, 643 F.2d 1261 (7th Cir. 1981) .......................................................33

*Houle v. Central Power Electric Cooperative, Inc.*, No. 09-CV-021, 2011 WL 1464918 (D.N.D. Mar. 24, 2011) .......................................37

*Investors Research Co. v. United States District Court for Central District of California*, 877 F.2d 777 (9th Cir. 1989) .........................................52

*Jackson v. Sims*, 201 F.2d 259 (10th Cir. 1953) .....................................................37

*Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324 (10th Cir. 1982)........................32

*Klamath Irrigation District v. United States Bureau of Reclamation*, 48 F.4th 934 (9th Cir. 2022), *cert. denied*, 144 S. Ct. 342 (2023) ...................46, 47

*Kodiak Oil & Gas (USA) Inc. v. Burr*, 932 F.3d 1125 (8th Cir. 2019) .........2, 26, 28

*Leonard v. Southwestern Bell Corp. Disability Income Plan*, 408 F.3d 528 (8th Cir. 2005)....................................................52

*Lochthowe v. C.F. Peterson Estate*, 692 N.W.2d 120 (N.D. 2005) ...................2, 42

*Loring v. United States*, 610 F.2d 649 (9th Cir. 1979) ...........................................13

*Lyon v. Gila River Indian Community*, 626 F.3d 1059 (9th Cir. 2010)...................37

*Mausolf v. Babbitt*, 85 F.3d 1295 (8th Cir. 1996)...................................................46

Appellate Case: 23-3019     Page: 8     Date Filed: 01/12/2024 Entry ID: 5353142

*Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994 (8th Cir. 1993) .......................................................................................44, 45, 46, 48

*Miller v. Zufall*, 6 A. 350 (Pa. 1886).........................................................12

*Minnesota v. United States*, 305 U.S. 382 (1939).............................38, 39

*Naegele Outdoor Advertising Co. v. Acting Sacramento Area Director, Bureau of Indian Affairs*, 24 IBIA 169 (1993) ....................................26

*Nahno-Lopez v. Houser*, 625 F.3d 1279 (10th Cir. 2010) ......................2, 12, 13, 14

*Narragansett Tribe of Indians v. Southern Rhode Island Land Development Corp.*, 418 F. Supp. 798 (D.R.I. 1976)............................16, 17, 23

*National Parks Conservation Ass'n v. United States EPA*, 759 F.3d 969 (8th Cir. 2014).......................................................................................44

*North Dakota ex rel. Stenehjem v. United States*, 787 F.3d 918 (8th Cir. 2015) .................................................................................................8, 49

*Oneida County v. Oneida Indian Nation of New York*, 470 U.S. 226 (1985) ................................................... 2, 3, 11, 17, 20, 23, 24, 41, 43

*Oneida Indian Nation of New York v. Oneida County*, 414 U.S. 661 (1974) ................................................................................................20

*Pettitt v. Boeing Co.*, 606 F.3d 340 (7th Cir. 2010)..................................52

*Phillips v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 795 F.2d 1393 (8th Cir. 1986)........................................................................................14

*Picuris Pueblo v. Oglebay Norton Co.*, 228 F.R.D. 665 (D.N.M. 2005) ...............41

*Poafpybitty v. Skelly Oil Co.*, 390 U.S. 365 (1968) .......... 2, 4, 16, 17, 18, 28, 37, 51

*Poarch Band of Creek Indians v. Hildreth*, 656 F. App'x 934 (11th Cir. 2016) (per curiam) .................................................................................35

*Public Service Co. of New Mexico v. Approximately 15.49 Acres of Land in McKinley County*, No. 15 CV 501, 2016 WL 10538199 (D.N.D. Apr. 4, 2016) .......................................................................13

*Puyallup Indian Tribe v. Port of Tacoma*, 717 F.2d 1251 (9th Cir. 1983) .................................................................................................36, 41

Appellate Case: 23-3019     Page: 9     Date Filed: 01/12/2024 Entry ID: 5353142

*Red Lake Band of Chippewas v. City of Baudette*, 730 F. Supp. 972 (D. Minn. 1990)......................................................................................37

*Richardson v. Malone*, 762 F. Supp. 1463 (N.D. Okla. 1991) ................................21

*Roedler v. Department of Energy*, 255 F.3d 1347 (Fed. Cir. 2001) .......................30

*Rowe v. Grapevine Corp.*, 527 S.E.2d 814 (W. Va. 1999)....................................18

*Sandobal v. Armour & Co.*, 429 F.2d 249 (8th Cir. 1970) ....................................38

*Sorenson v. Sorenson*, 64 F.4th 969 (8th Cir. 2023).............................................34

*Spirit Lake Tribe v. North Dakota*, 262 F.3d 732 (8th Cir. 2001), *abrogated by Wilkins v. United States*, 598 U.S. 152 (2023).........................2, 36

*Swinomish Indian Tribal Community v. BNSF Railway Co.*, No. C15-0543, 2023 WL 2646470 (W.D. Wash. Mar. 27, 2023)....................................22

*Taylor v. Anderson*, 234 U.S. 74 (1914) .................................................................24

*Tee-Hit-Ton Indians v. United States*, 348 U.S. 281 (1955)...................................20

*Tenneco Oil Co. v. Sac & Fox Tribe of Indians of Oklahoma*, 725 F.2d 572 (10th Cir. 1984).............................................................................................27

*Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972)...............46, 48

*Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080 (8th Cir. 1999) ......................................................................................................44, 49

*Two Shields v. Wilkinson*, 790 F.3d 791 (8th Cir. 2015) ........................................39

*United States v. Baden Plaza Associates*, 826 F. Supp. 294 (E.D. Mo. 1993) ......................................................................................................40

*United States v. Dairyland Insurance Co.*, 674 F.2d 750 (8th Cir. 1982) ......................................................................................................34

*United States v. Elmardoudi*, 501 F.3d 935 (8th Cir. 2007)...................................53

*United States v. Fortenberry*, 840 F. App'x 64 (8th Cir. 2021) (per curiam) ......................................................................................................53

*United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968 (2d Cir. 1984) .........................................................................................................46

Appellate Case: 23-3019    Page: 10    Date Filed: 01/12/2024 Entry ID: 5353142

*United States v. Milner*, 583 F.3d 1174 (9th Cir. 2009) ....................................2, 13

*United States v. Pend Oreille Public Utility District No. 1*, 28 F.3d 1544
   (9th Cir. 1994)........................................................................................11, 22

*United States v. Ramsey*, 271 U.S. 467 (1926) ....................................................21

*United States v. Rogers*, 448 F.3d 1033 (8th Cir. 2006)........................................52

*United States v. Sioux Nation of Indians*, 448 U.S. 371 (1980) ............................30

*United States v. Springer*, 875 F.3d 968 (10th Cir. 2017) ....................................14

*United States v. Temple*, No. CR 17-50062, 2019 WL 590224 (D.S.D.
   Feb. 13, 2019) ..................................................................................................11

*Wardle v. Northwest Investment Co.*, 830 F.2d 118 (8th Cir. 1987) ......................13

*Wichita & Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765 (D.C.
   Cir. 1986) ........................................................................................................47

*Wilson v. Omaha Indian Tribe*, 442 U.S. 653 (1979)............................................12

*Wolfchild v. Redwood County*, 824 F.3d 761 (8th Cir. 2016) ................................24

STATUTES

18 U.S.C. § 1151(c) ...............................................................................................21

25 U.S.C. § 175......................................................................................................47

25 U.S.C. § 324.................................................................................................29, 31

25 U.S.C. § 325.................................................................................................29, 31

25 U.S.C. § 345........................................................................................................1

25 U.S.C. § 349......................................................................................................21

25 U.S.C. § 1331......................................................................................................1

28 U.S.C. § 516......................................................................................................47

28 U.S.C. § 547(b) .................................................................................................47

28 U.S.C. § 1291......................................................................................................1

Appellate Case: 23-3019    Page: 11    Date Filed: 01/12/2024 Entry ID: 5353142

28 U.S.C. § 1360(a) .................................................................. 19

28 U.S.C. § 1360(b) .................................................................. 19

28 U.S.C. § 2415(b) .................................................................. 23

Act of May 6, 1822, ch. 58, 3 Stat. 683 .................................... 23

**OTHER AUTHORITIES**

25 C.F.R. § 169.1(a) ................................................................. 31

25 C.F.R. § 169.107(b)(1)(iii) ................................................... 31

25 C.F.R. § 169.112 ................................................................. 31

25 C.F.R. § 169.116(b)(3) ......................................................... 31

25 C.F.R. § 169.118 ................................................................. 32

25 C.F.R. § 169.125 ................................................................. 27

25 C.F.R. § 169.125(c)(5)(ix) ...................................................... 5

25 C.F.R. § 169.402(a)(2) ......................................................... 31

25 C.F.R. § 169.413 ............................................................ 16, 17

*American Indian Law Deskbook*, Westlaw (database updated May 2023) ............................................................................... 22

Answer & Counterclaim, *Tesoro High Plains Pipeline Co. v. United States*, No. 21-cv-00090 (D.N.D. Feb. 8, 2022), R. Doc. 28 ........................ 6, 15

*Cohen's Handbook of Federal Indian Law* (2012) ................ 11, 12, 16, 21

Complaint, *Tesoro High Plains Pipeline Co. v. United States*, No. 21-cv-00090 (D.N.D. Apr. 23, 2021), R. Doc. 1 ........................................ 6

Fed. R. Civ. P. 19(a)(1)(A) ....................................................... 35

Fed. R. Civ. P. 19(a)(1)(B)(i) .................................................... 35

Fed. R. Civ. P. 19(a)(1)(B)(ii) ................................................... 35

Fed. R. Civ. P. 19(b) ............................................................... 40

Appellate Case: 23-3019     Page: 12     Date Filed: 01/12/2024 Entry ID: 5353142

Fed. R. Civ. P. 24(b)(1)(B) ................................................................49, 50

Joint Request to Abstain from Ruling, *Tesoro High Plains Pipeline Co. v. United States*, No. 21-cv-00090 (D.N.D. Mar. 7, 2022), R. Doc. 38 ..........................................................................................................51

Joint Status Report, *Tesoro High Plains Pipeline Co. v. United States*, No. 21-cv-00090 (D.N.D. Aug. 26, 2022), R. Doc. 48 ......................................39

Motion to Intervene, *Tesoro High Plains Pipeline Co. v. United States*, No. 21-cv-00090 (D.N.D. Nov. 6, 2023), R. Doc. 70 ..................................47, 48

Order Denying Motion to Intervene, *Tesoro High Plains Pipeline Co. v. United States*, No. 21-cv-00090 (D.N.D. Aug. 8, 2023), R. Doc. 67 ..........................................................................................................50

Order Granting Plaintiff's Motion to Sever, *Tesoro High Plains Pipeline Co. v. United States*, No. 21-cv-00090 (D.N.D. Nov. 8, 2023), R. Doc. 71 ......................................................................7, 45, 51

United States Response to Motion to Dismiss Counterclaim, *Tesoro High Plains Pipeline Co. v. United States*, No. 21-cv-00090 (D.N.D. Oct. 21, 2022), R. Doc. 62 ...........................................................................15, 23

7 Charles Alan Wright et al., *Federal Practice and Procedure* (3d ed. 2019) ....................................................................................................36, 38

Appellate Case: 23-3019     Page: 13     Date Filed: 01/12/2024 Entry ID: 5353142

# JURISDICTIONAL STATEMENT

The United States District Court for the District of North Dakota had jurisdiction over this action under 25 U.S.C. § 345 and 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291. The Order granting Andeavor's motion to dismiss and denying the Individual Landowners' motion to intervene in *Tesoro High Plains Pipeline Co. v. United States*, Case No. 1:21-cv-00090 (D.N.D. Apr. 23, 2021), was entered on August 8, 2023. The Individual Landowners timely appealed on September 5, 2023.

1

**STATEMENT OF ISSUES**

1. Do the Individual Landowners have a cognizable trespass cause of action under federal common law for a trespass on lands held in trust for them by the United States?

   - *Oneida County v. Oneida Indian Nation of New York*, 470 U.S. 226 (1985)
   - *Poafpybitty v. Skelly Oil Co.*, 390 U.S. 365 (1968)
   - *Nahno-Lopez v. Houser*, 625 F.3d 1279 (10th Cir. 2010)
   - *United States v. Milner*, 583 F.3d 1174 (9th Cir. 2009)

2. Can the Individual Landowners sue for breach of an easement that the United States entered into on their behalf as their trustee, that is for use and possession of their trust lands, and that required their approval?

   - *Poafpybitty v. Skelly Oil Co.*, 390 U.S. 365 (1968)
   - *Kodiak Oil & Gas (USA) Inc. v. Burr*, 932 F.3d 1125 (8th Cir. 2019)
   - *Hebah v. United States*, 428 F.2d 1334 (Ct. Cl. 1970)
   - *Spirit Lake Tribe v. North Dakota*, 262 F.3d 732 (8th Cir. 2001)

3. Do the Individual Landowners have a cognizable unjust enrichment claim under federal common law based on the benefits obtained from the unlawful use and possession of their trust lands?

   - *Oneida County v. Oneida Indian Nation of New York*, 470 U.S. 226 (1985)
   - *Lochthowe v. C.F. Peterson Estate*, 692 N.W.2d 120 (N.D. 2005)

4. Did the district court err in denying the Individual Landowners' motion to intervene in a later-filed case where the United States raises the same trespass claim that the Individual Landowners assert here, and in ignoring the Individual Landowners' request to consolidate the two cases?

   - *Dine Citizens Against Ruining Our Environment v. BIA*, 932 F.3d 843 (9th Cir. 2019)
   - *Arizona v. California*, 460 U.S. 605, 615 (1983)

Appellate Case: 23-3019   Page: 15   Date Filed: 01/12/2024 Entry ID: 5353142

## INTRODUCTION

Rarely does a case concern a legal wrong as obvious as Andeavor's trespass. No one disputes that Andeavor owns an oil pipeline that runs across Indian land held in trust by the United States for the Individual Landowners. No one disputes that the easement that Andeavor relied on to occupy the trust lands expired over a decade ago and has not been renewed. And no one disputes that the resulting damages amount, at minimum, to millions of dollars. And yet, Andeavor and the district court maintain that the Individual Landowners must wait indefinitely for relief while Andeavor continues to trespass, because they say only the United States may act to vindicate legal rights that belong to the Individual Landowners.

Not so. The Individual Landowners are entitled to assert federal claims for trespass, breach of easement, and unjust enrichment, and for accompanying punitive damages, on their own behalf against Andeavor. Federal law exclusively regulates and protects Indian lands, and the Supreme Court has recognized, most notably in *Oneida County v. Oneida Indian Nation of New York ("Oneida II")*, 470 U.S. 226 (1985), that the federal common law provides Indians a trespass right of action to protect those lands. In the previous appeal in this case, this Court reserved decision on whether that cause of action is available here—where the Indian lands are trust lands held for the benefit of individual Indians—so that the United States could weigh in. The United States has now agreed the claim exists by filing it on the

Individual Landowners' behalf in a separate suit. Under *Poafpybitty v. Skelly Oil Co.*, 390 U.S. 365 (1968), the Individual Landowners may assert the claim as well. Likewise, they may sue directly for breach of the easement, without needing to join the United States, and may assert unjust enrichment from Andeavor's unlawful use and possession of the trust lands.

The district court erred in ruling otherwise. It also committed reversible error in denying or ignoring the Individual Landowners' requests, via either intervention or consolidation, to participate directly in the United States' action raising the trespass claim on their behalf. The decision below must be reversed.

## STATEMENT OF THE CASE

This case has a lengthy and complicated history encompassing both a related Administrative Procedure Act ("APA") case and a prior appeal. The key events are briefly summarized.

### A. Andeavor's Trespass

Andeavor Logistics L.P. and its co-defendants (collectively, "Andeavor") own an oil pipeline that crosses more than 35 allotments held in trust by the United States on the Fort Berthold Reservation in western North Dakota. App. 40; R. Doc. 28, at 4. Starting in 1953, the Bureau of Indian Affairs ("BIA") granted a series of 20-year easements for the pipeline pursuant to its authority under the Indian Right-of-Way Act of 1948, Act of Feb. 5, 1948, codified at 25 U.S.C. §§ 323-38. App. 51,

4

89; R. Doc. 28, at 15. The most recent easement (the "1993 Easement") expired by its own terms on June 18, 2013. App. 89; R. Doc. 99-4, at 1. It has not been renewed. App. 81; R. Doc. 86, at 8.

Sometime in or after 2017, Andeavor initiated negotiations with impacted Indian landowners to renew the expired right-of-way. App. 115; R. Doc. 139, at 3. At present, however, Andeavor does not possess a valid of right-of-way, nor has it removed the pipeline and "[r]estored the land [affected by the right-of-way] to its original condition." App. 63; R. Doc. 28, at 27; 25 C.F.R. § 169.125(c)(5)(ix).

Accordingly, on October 5, 2018, the Individual Landowners initiated this action. App. 20. They sue on behalf of a putative class of individual allottees who are beneficial owners of the trust lands. App. 20, 40-47; R. Doc. 28, at 4-11. The Individual Landowners allege causes of action for trespass, breach of easement, and unjust enrichment, and seek punitive damages. App. 61-66; R. Doc. 28, at 25-30.

### B. The First Dismissal And Subsequent Reversal

The district court initially dismissed this case for purported failure to exhaust administrative remedies. *See Chase v. Andeavor Logistics, L.P. ("Chase I")*, 12 F.4th 864, 867 (8th Cir. 2021). This Court, however, reversed. *Id.* In reversing, the Court deferred decision on whether the Individual Landowners stated a claim. *Id.* at 876-78. As to the trespass claim in particular, the Court delayed decision to see

"what action the [BIA] may take," explaining that "[t]he views of the BIA on these legal issues would obviously be important." *Id.* at 876-77.

### C. The *Tesoro* Suit

While this action's first appeal was pending, the BIA initiated administrative proceedings against Andeavor. *See Chase I*, 12 F.4th at 875. The BIA first ordered Andeavor to cease use of its pipeline and pay $187.2 million in damages. *Id.* It later reduced that damages award to just under $4 million dollars. *Id.* But that damages award, too, was vacated by the BIA with instructions to the Regional Director of the BIA's Great Plains Regional Office to "take such action as is necessary to address Andeavor's continued occupation of the expired right-of-way." *Id.* (brackets omitted).

After the BIA vacated the $4 million award, Tesoro High Plains Pipeline Company ("Tesoro"), an Andeavor subsidiary, filed an APA action—*Tesoro High Plains Pipeline Co. v. United States*, Case No. 1:21-cv-00090 (D.N.D. Apr. 23, 2021)—seeking to reinstate it. Compl. ("*Tesoro* Compl."), *Tesoro* (Apr. 23, 2021), R. Doc. 1. At the district court, both this case and *Tesoro* are assigned to Judge Traynor. In response to the APA suit, the United States filed a trespass counterclaim on behalf of impacted Indian landowners—the same trespass claim that the Individual Landowners themselves have asserted in this case since 2018. *See* Answer & Counterclaim ("*Tesoro* Counterclaim") at 27-28, ¶¶ 37-39, *Tesoro* (Feb.

6

8, 2022), R. Doc. 28. Recently, the district court severed and stayed the United States' trespass counterclaim. *See* Order Granting Motion to Sever ("*Tesoro* Stay Order"), *Tesoro* (Nov. 8, 2023), R. Doc. 71.

After *Tesoro* was filed and this Court remanded this case, the district court directed the parties in this case to show cause why the two actions should not be combined. App. 31. The district court explained that it "believe[d] that joining this case with the <u>Tesoro</u> case may benefit all parties and promote judicial economy." App. 95; R. Doc. 105, at 4. In response to the order to show cause, the Individual Landowners agreed with the district court that the two actions should be consolidated. App. 96-101; R. Doc. 111, at 1-6; *see also* App. 102-10; R. Doc. 115, at 1-9 (reiterating the request in reply). They also noted that their brief "amount[ed] to a motion to intervene, filed at the direction of the Court." App. 98 n.1; R. Doc. 111, at 3 n.1. The Individual Landowners renewed their consolidation request during the last status conference to occur before the district court issued the ruling now on appeal. App. 163; R. Doc. 145, at 12.

### D. The Second Dismissal

On August 8, 2023, the district court concluded that the Individual Landowners fail to state a claim and dismissed the operative complaint with prejudice. App. 35. In the same order, the district court denied intervention in *Tesoro*. App. 146-50; R. Doc. 139, at 34-38. Briefly, the district court

7

acknowledged that the Individual Landowners had sought to consolidate *Tesoro* and this case, but it did not analyze consolidation. App. 119; R. Doc. 139, at 7. This appeal followed.

## STANDARD OF REVIEW

This Court reviews an order dismissing a case de novo, accepting as true the complaint's factual allegations and drawing all reasonable inferences in favor of the non-moving party. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009). An order denying a motion to intervene as of right is also subject to de novo review. *North Dakota ex rel. Stenehjem v. United States*, 787 F.3d 918, 920 (8th Cir. 2015). An order denying a motion for permissive intervention or for consolidation is reviewed for abuse of discretion. *Coffey v. Commissioner*, 663 F.3d 947, 951 (8th Cir. 2011); *Enter. Bank v. Saettele*, 21 F.3d 233, 235 (8th Cir. 1994).

## SUMMARY OF ARGUMENT

**Issue 1:** The Individual Landowners can assert a federal common law claim for trespass. The Supreme Court has long recognized that Indians have a federal common law trespass action against those who maintain an unauthorized presence on Indian lands. This is confirmed by the United States' filing of the claim on the Individual Landowners' behalf in *Tesoro*. Under long-established Supreme Court

8

precedent, because the United States may assert the claim, the Individual Landowners may as well.

**Issue 2:**  The Individual Landowners can assert a breach-of-easement claim. The claim arises under and is governed by federal law because it arises in an area of extensive federal regulation.  The Individual Landowners may sue for breach of easement because the United States can do so.  They also may sue because they are third-party beneficiaries of the easement.  And the United States is not an indispensable party to the claim because the claim is brought to *protect* Indian land interests (and regardless, if needed the United States can be joined).

**Issue 3:**  The Individual Landowners can assert a federal common law claim for unjust enrichment.  In addition to providing a trespass claim, the federal common law allows Indians to assert equitable claims when Indian lands are trespassed upon. The elements of that unjust enrichment claim are satisfied here because Andeavor has obtained or secured benefits from the use of the Individual Landowners' land.

**Issue 4:**  The district court erred in denying the motion to intervene in *Tesoro* and ignoring the request to consolidate *Tesoro* and this case.  First, the Individual Landowners may intervene as of right because the United States' interests differ from the Individual Landowners'.  Second, the district court abused its discretion in denying permissive intervention because the Supreme Court has recognized that Indians may permissively intervene when the United States acts as their

9

representative. And third, the district court again abused its discretion—and prevented meaningful appellate review—by failing to address consolidation.

## ARGUMENT

## I. THE INDIVIDUAL LANDOWNERS CAN BRING A FEDERAL TRESPASS CLAIM

Federal law provides the Individual Landowners a cause of action for trespass over their trust lands. As the Supreme Court has recognized in cases like *Oneida II*, the federal common law protects Indian land rights. In *Chase I*, this Court deferred decision as to whether this principle applies here, so that the United States could weigh in. The United States has now confirmed that the cause of action exists by asserting it on the Individual Landowners' behalf. Under *Poafpybitty*, the Individual Landowners themselves may also assert the claim. Were it otherwise, Indian trust allottees like the Individual Landowners would have no federal or state court remedy for trespasses of their Indian lands.

The district court disagreed, but it did so based on artificial distinctions between (1) aboriginal title and trust title and (2) lands owned by tribes and lands owned by individual Indians. The trespass count must be reinstated.[1]

---

[1] The parties agree that as long as the Individual Landowners have a federal trespass cause of action, there is also subject matter jurisdiction for the claim, as this Court determined in *Chase I. See* 12 F.4th at 871; *see also* App. 127; R. Doc. 139, at 15 (summarizing the parties' positions and likewise agreeing). Similarly, the parties agree that the Individual Landowners' Count IV, asserting punitive damages, must

10

## A. The Federal Common Law Provides A Cause Of Action For Trespass On Indian Trust Lands

It has long been established that Indians have a federal common law trespass action against those who maintain an unauthorized presence on Indian lands. *Oneida II*, 470 U.S. at 233-36 & n.6 (citing cases going back to 1810); *see also, e.g.*, *United States v. Pend Oreille Pub. Util. Dist. No. 1*, 28 F.3d 1544, 1549 n.8 (9th Cir. 1994) (noting "a variety of federal common law causes of action to protect Indian lands from trespass" (citing *Oneida II* and other cases)). As the Supreme Court explained in *Oneida II*, Indians' right to "exclusive possession" of their lands is "a *federal* right." 470 U.S. at 235 (emphasis in original); *see also, e.g.*, *Bledsoe v. United States*, 349 F.2d 605, 607 (10th Cir. 1965) ("[T]he leasing of restricted Indian lands, and the right to enter and remain thereon, is a matter regulated by federal law."). As a result, Indians "can maintain [an] action for violation of their possessory rights based on the federal common law." *Oneida II*, 470 U.S. at 236.

That federal-common-law cause of action is available here. The lands at issue are "held in trust by the federal government for the beneficial ownership of the [Individual Landowners]." *Cohen's Handbook of Federal Indian Law* § 15.03 (2012). And "[w]hen the United States owns Indian land in trust for … individual Indians, 'for all practical purposes, [the individual Indians] own the land.'" *United*

___

be reinstated if the Individual Landowners have stated a federal trespass claim. *See* App. 82; R. Doc. 86, at 13.

11

*States v. Temple*, No. CR 17-50062, 2019 WL 590224, at *5 (D.S.D. Feb. 13, 2019) (cleaned up) (quoting *United States v. Shoshone Tribe of Indians of Wind River Rsrv. in Wyo.*, 304 U.S. 111, 116 (1938)).  That means the Individual Landowners hold the right to use and possess their lands, just like the tribe in *Oneida II*.  The Individual Landowners' property rights, moreover, are governed exclusively by federal law. *See Wilson v. Omaha Indian Tribe*, 442 U.S. 653, 670-71 (1979).  The preconditions to allow the Individual Landowners to bring a federal common law action for trespass on their lands are thus satisfied.  *See Cohen's Handbook* § 15.08[1] ("Tribal property rights are enforceable under federal law."); *cf., e.g.*, *Miller v. Zufall*, 6 A. 350, 353 (Pa. 1886) (recognizing that plaintiff who held "equitable title" to property and "had an indubitable right of possession" could "maintain [a trespass] action against a wrong-doer").

Cases to have addressed this question agree.  *E.g.*, *Begay v. Pub. Serv. Co. of N.M.*, 710 F. Supp. 2d 1161, 1211-12 (D.N.M. 2010) (noting that courts "have found that there exists a federal common law cause of action for trespass on Indian lands").  The decision by the Tenth Circuit in *Nahno-Lopez v. Houser*, 625 F.3d 1279 (10th Cir. 2010) (joined by Gorsuch, J.), is instructive.  There, the court considered an action by Indian allottees claiming unlawful use of their trust property.  *Id.* at 1280.  Determining there was federal subject matter jurisdiction, the Tenth Circuit found the allottees' "federal common-law trespass" cause of action to be "a viable claim."

12

*Id.* at 1282.  Similarly, in *United States v. Milner*, 583 F.3d 1174 (9th Cir. 2009), the Ninth Circuit considered a trespass claim by a tribe for unlawful occupation of its trust lands.  *Id.* at 1180-81.  Determining the defendants were liable for trespass, the Ninth Circuit expressly held that "[f]ederal common law governs an action for trespass on Indian lands."  *Id.* at 1182; *see also Loring v. United States*, 610 F.2d 649, 651 (9th Cir. 1979) (confirming subject matter jurisdiction to "protect[] the Indian allotment against improvident grants of rights-of-way").  And in *Bird Bear v. McLean County*, 513 F.2d 190 (8th Cir. 1975), this Court did not question that Individual trust allottees can assert a federal common law trespass claim (though it found the claim lacking under the facts at issue).  *See id.* at 191; *see also Wardle v. Nw. Inv. Co.*, 830 F.2d 118, 121 (8th Cir. 1987) (noting that *Bird Bear* recognized jurisdiction over the Indian allottees' action).  Other decisions are in accord.[2]

The district court gave *Nahno-Lopez* little credit.  It observed that in *Davilla v. Enable Midstream Partners, L.P.*, 913 F.3d 959 (10th Cir. 2019), the Tenth Circuit suggested, in footnoted dicta, that it is "unclear" whether the Tenth Circuit has "ever

---

[2] *E.g.*, *Grondal v. United States*, No. 09-cv-18, 2021 WL 1962563, at *1, *7 (E.D. Wash. May 17, 2021); *Fettig v. Fox*, No. 19-cv-096, 2020 WL 9848691, at *14 (D.N.D. Nov. 16, 2020); *Pub. Serv. Co. of N.M. v. Approximately 15.49 Acres of Land in McKinley Cnty.*, No. 15 CV 501, 2016 WL 10538199, at *5 (D.N.D. Apr. 4, 2016); *see also Hammond v. Cnty. of Madera*, 859 F.2d 797, 803-05 (9th Cir. 1988) (addressing damages awarded in trespass action brought by Indian trust allottee), *abrogated on other grounds as noted in L.W. v. Grubbs*, 92 F.3d 894, 897-98 (9th Cir. 1996).

13

formally recognized a federal claim for trespass on an Indian allotment," given that *Nahno-Lopez*'s outcome turned on "a lack of evidence to prove an essential element." *Id.* at 965 n.2; *see* App. 140; R. Doc. 139, at 28. That much is true, but the key part of *Nahno-Lopez* was *jurisdictional*. 625 F.3d at 1282-83. It is therefore a binding holding in the Tenth Circuit, notwithstanding that the trespass claim ultimately failed. *See United States v. Springer*, 875 F.3d 968, 973 (10th Cir. 2017) ("Jurisdiction is a threshold question that a federal court must address before reaching the merits, even if the merits question is more easily resolved and the party prevailing on the merits would be the same as the party that would prevail if jurisdiction were denied."); *see also Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) (noting that *Nahno-Lopez* "recogniz[ed] [a] federal common law claim for trespass to certain Indian lands"). In turn, the district court's decision creates a direct conflict with Tenth Circuit law—which this Court strives to "avoid." *Phillips v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 795 F.2d 1393, 1400 (8th Cir. 1986) (describing this Court's general practice to "defer to the opinion of another circuit").[3]

---

[3] The district court also sought to distinguish *Milner*, maintaining that *Miller* recognized the ability of *tribes*, not *individual Indians*, to assert a federal trespass claim. *See* App. 140; R. Doc. 139, at 28. But that is a distinction without a difference, as explained below. *Infra* 22-24.

**B. The United States Agrees That A Common Law Action Exists, And**
   *Poafpybitty* **Establishes That The Individual Landowners May Assert**
   **That Claim On Their Own Behalf**

In *Chase I*, this Court deferred resolution of the trespass question because the United States had not yet decided whether to file a federal common law trespass claim against Andeavor on behalf of the allottees. *See* 12 F.4th at 876. It explained that "any action the BIA now takes will be of significance in resolving the judicial dispute" and that "[t]he views of the BIA on these legal issues would obviously be important." *Id.* at 876-77.

In *Tesoro*, the BIA through the Department of Justice has now asserted the trespass claim that the Individual Landowners themselves pursue here. *Tesoro* Counterclaim at 27-28, ¶¶ 37-39. In so doing, the BIA has conveyed its agreement with the Individual Landowners that the federal common law of action exists. That is for good reason. As the Government explains, "the Supreme Court, in numerous cases, has adjudicated such claims by the United States." U.S. Resp. to Mot. to Dismiss Counterclaim ("U.S. *Tesoro* Resp.") at 19, *Tesoro* (Oct. 21, 2022), R. Doc. 62.

Because the United States can assert a trespass claim to protect the Individual Landowners' allotment, the Individual Landowners may do so as well. "Where an action involving Indian land can be maintained by the protected Indians or Indian tribes as well as by the United States on their behalf, it is settled law that the right to

15

assert the sovereign interests … is equally available to either plaintiff." *Narragansett Tribe of Indians v. S. R.I. Land Dev. Corp.*, 418 F. Supp. 798, 805 (D.R.I. 1976). *Poafpybitty* explains why. "[T]he allotment system created interests in both the Indian and the United States." 390 U.S. at 369. And the "dual purpose of the allotment system would be frustrated unless both the Indian and the United States were empowered to seek judicial relief to protect the allotment." *Id.* Indeed, "the Indian's right to sue should not depend on the good judgment or zeal of a government attorney." *Id.* at 374. Accordingly, "[a]n Indian, as the beneficial owner of lands held by the United States in trust has a right acting independently of the United States to sue to protect his property interests." *Agua Caliente Band of Mission Indians v. Riverside Cnty.*, 442 F.2d 1184, 1186 (9th Cir. 1971) (citing *Poafpybitty*); *see also, e.g.*, *Cohen's Handbook* § 16.03[3][c] ("Both allottees, and the United States as trustee, may obtain judicial protection of allottees' rights.").

BIA regulations confirm that Indian allottees can assert on their own behalf the same claims that the United States may bring as their trustee. With respect to trespass specifically, 25 C.F.R. § 169.413 provides that "[i]f an individual or entity takes possession of, or uses, Indian land … without a right-of-way and a right-of-way is required, the unauthorized possession or use is a trespass." In such event, BIA "may … pursue any … remedies available under applicable law." *Id.* And

16

"[t]he Indian landowners may pursue any available remedies under applicable law." *Id.*[4]

Disagreeing, the district court construed *Poafpybitty* to hold merely that the United States' ability to sue does not *prevent* Indians themselves from suing, but that individual Indians must still find a cause of action separate from the United States'. *See* App. 129-32; R. Doc. 139, at 17-20. *Poafpybitty* is not so cabined. It recognized *both* Individual Indians' "capacity to sue … with respect to [their] affairs, including [their] restricted property," *and* their ability to proceed in the absence of the United States. *Poafpybitty*, 390 U.S. at 371 (quotation marks omitted); *see also Narragansett*, 418 F. Supp. at 812 (endorsing this reading and discussing Tenth Circuit law recognizing the same (citing *Choctaw & Chickasaw Nations v. Seitz*, 193 F.2d 456, 459-60 (10th Cir. 1951))). Thus in *Oneida II*, for instance, the Supreme Court noted that its decision in *United States v. Santa Fe Pacific Railroad Co.*—an action brought by the United States—"held that *Indians* have a common-law right of action for an accounting … against trespassers on their land." *Oneida II*, 470 U.S.

---

[4] In *Chase I*, where this was a tertiary issue postponed for later resolution, this Court observed that a claim under § 169.413 itself would be a statutory claim, not a common law claim, and in that sense this regulation cannot establish the Individual Landowners' right to sue. 12 F.4th at 877. In this appeal, the Individual Landowners rely on § 169.413 as confirmation that they have the right to sue *under the common law*. *See* 25 C.F.R. § 169.413 (recognizing Indian landowners' concurrent right to "pursue any additional remedies available *under applicable law*" (emphasis added)).

Appellate Case: 23-3019     Page: 30     Date Filed: 01/12/2024 Entry ID: 5353142

at 235-36 (emphasis added). Indeed, that is the only logical conclusion to be reached when the claims the United States asserts are *on behalf of* Indians.

Citing *Heckman v. United States*, 224 U.S. 413 (1912), the district court also suggested that the Individual Landowners' trespass claim is foreclosed *because* the United States has brought suit, reasoning that "such action necessarily precludes [an identical] prosecution by the allottees." App. 148 n.10; R. Doc. 139, at 36 (quoting *Heckman*, 224 U.S. at 446). This reading misconstrues *Heckman*. *Heckman* recognized that "the allotment system created interests in both the Indian and United States," and therefore *supports* the principle that "the right of the United States to institute a suit to protect [an] allotment d[oes] not diminish the Indian's right to sue on his own behalf." *Poafpybitty*, 390 U.S. at 369-70 (discussing *Heckman*). To the extent *Heckman* mentioned that actions by the United States can "preclude[]" actions by allottees, it meant that an action by the United States *that reaches judgment* can be *claim preclusive*. *See, e.g.*, *Rowe v. Grapevine Corp.*, 527 S.E.2d 814, 826 (W. Va. 1999) (noting that *Heckman* stands for the "principle of representative claim preclusion"). The mere *initiation* of a parallel action by the United States does not foreclose the Individual Landowners' from asserting their claim directly.

## C. Absent A Federal Claim, The Individual Landowners Lack Any Federal Or State Court Remedy

The existence of a federal common law cause of action is also evidenced by the fact that, absent such a claim, the Individual Landowners would be left without

18

a federal or state court trespass remedy. Congress expressly conferred state court jurisdiction over certain "civil causes of action … to which Indians are parties which arise in the areas of Indian country." 28 U.S.C. § 1360(a). But in so doing, Congress exempted trust lands from this state authority. 28 U.S.C. § 1360(b). The Supreme Court has held that this exemption "prohibit[s] state courts … from applying state laws or enforcing judgments in ways that would effectively result in the 'alienation, encumbrance, or taxation' of trust property." *Byran v. Itasca Cnty.*, 426 U.S. 373, 391 (1976) (quoting Pub. L. 280 § 4(b) (codified at 28 U.S.C. § 1360(b)).

Congress has thus made clear that "state courts do not have jurisdiction to adjudicate the right to the possession or ownership of interest in property held in trust for [individual Indians]." *Alaska Dep't of Pub. Works v. Agli*, 472 F. Supp. 70, 72 (D. Alaska 1979). Just the opposite, "[t]he statutes that do grant jurisdiction over 'any civil action involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any Act of Congress or treaty' place that jurisdiction in the federal courts." *Id.* at 73 (citing 28 U.S.C. § 1353, 25 U.S.C. § 345). The federal common law, therefore, must be the source of the Individual Landowners' protection from trespass on their trust lands.

The district court insisted that the absence of a federal or state court remedy is irrelevant. App. 142-43; R. Doc. 139, at 30-31. Not so. The Supreme Court determined that a very similar provision exempting Indian lands in New York from

19

state law while other state jurisdiction was conferred showed that "Indian land claims [are] exclusively a matter of federal law." *Oneida II*, 470 U.S. at 241 (citing *Oneida Indian Nation of N.Y. v. Oneida Cnty. ("Oneida I")*, 414 U.S. 661, 680-82 (1974)). Hence, as Judge Tashima of the Ninth Circuit has explained, when, in the Indian land context, "the substantive state law cannot apply," "state courts cannot adjudicate th[e] dispute," and "no federal statute or treaty governs th[e] dispute," "federal common law" applies. *All Mission Indians Hous. Auth. v. Silvas*, 680 F. Supp. 330, 332 (C.D. Cal. 1987).

### D. Federal Common Law Trespass Claims Are Not Limited To Tribal Assertions Of Aboriginal Title, Which Is Weaker Than Trust Title

The district recognized that a tribe may bring a trespass action to protect its aboriginal title. App. 131; R. Doc. 139, at 19. But it maintained that no federal cause of action is available for trespasses on *trust* lands owned by *individual* Indians. App. 131-32; R. Doc. 139, at 19-20. The district court was wrong—neither distinction prevents the Individual Landowners' claim.

To start, the federal common law trespass claim is not limited to aboriginal title, as opposed to trust title. Of the two titles, aboriginal title is the *weaker* right. Unlike trust title, Indian title cannot be the subject of a takings claim. *See Tee-Hit-Ton Indians v. United States*, 348 U.S. 281, 279 (1955). Trust title, however, possesses all the beneficial attributes of aboriginal title. "[T]rust allotments retain 'during the trust period a distinctively Indian character, being devoted to Indian

20

occupancy under the limitations imposed by federal legislation.'" *United States v. Ramsey*, 271 U.S. 467, 470 (1926) (quoting *United States v. Pelican*, 232 U.S. 442, 449 (1914)).  They accordingly enjoy the same federal laws and protections that go with aboriginal title, including exemption from alienation and state law, and the extension of federal and tribal jurisdiction.[5]  In short, trust title is equal or superior to aboriginal title in every respect.  The notion that trust title enjoys less protection against trespass, therefore, get things completely backwards.

Indeed, at the most basic level, Indian title and trust title are not even completely separate concepts, for trust title evolved out of Indian title into a superior right.  *See Cohen's Handbook* § 15.04[3][a] ("Over many decades, the federal government's interest in tribal land was gradually reconceived as a trustee's fee title, and the tribal interest as beneficial ownership under trust."); *id.* § 15.09j[1][b] ("The formal terminology for Indian title changed from the right of occupancy/fee title characterization of the Marshall Court to the concept of land held in trust for tribes by the United States."); 18 U.S.C. § 1151(c) (describing individual Indians' interest

---

[5] *E.g.*, 25 U.S.C. § 349 ("[U]ntil the issuance of fee-simple patents all allottees to whom trust patents shall be issued shall be subject to the exclusive jurisdiction of the United States."); *Cohen's Handbook*, § 16.03 ("During the trust … period, federal law protects allotments against alienation, encumbrance, and taxation without congressional consent."); 18 U.S.C. § 1151(c) (deeming trust lands to be Indian country); *Richardson v. Malone*, 762 F. Supp. 1463, 1468 (N.D. Okla. 1991) (recognizing tribal jurisdiction over trust allotments and determining this supports existence of federal common law claims).

Appellate Case: 23-3019     Page: 34     Date Filed: 01/12/2024 Entry ID: 5353142

in their trust allotments as "Indian titles").  Namely, trust title developed as the United States acted to increase the protection afforded Indian lands by recognizing title.  *See Cohen's Handbook* § 15.04[3][a].  The *American Indian Law Deskbook* thus observes that, "except, most importantly, the title's status as property for taking purposes under the Fifth Amendment," "[t]he rights attaching to tribal title are unaffected by its source."  *Am. Indian Law Deskbook*, § 3:1, Westlaw (database updated May 2023); *see also id.* § 3:3 (discussing nonaborignal title-based occupancy rights and confirming that such "possessory interests … are protected by federal law, including … common-law restraints on alienation").

Because trust title is stronger than aboriginal title, many cases have recognized that the federal common law provides a right of action for trespass <u>*on trust lands*</u>.  As noted above, *Milner* is one such case.  *Supra* 12-13.  More examples abound.  *E.g.*, *Pend Oreille*, 28 F.3d at 1549 n.8, 1553 n.17; *Swinomish Indian Tribal Cmty. v. BNSF R. Co.*, No. C15-0543, 2023 WL 2646470, at *3, *5 (W.D. Wash. Mar. 27, 2023); *Bad River Band of Lake Superior Tribe of Chippewa Indians of Bad River Rsrv. v. Enbridge Energy Co., Inc.*, 626 F. Supp. 3d 1030, 1037, 1040 (W.D. Wis. 2022).

The distinction between lands owned *by individual Indians* and lands owned *by tribes* is also artificial.  When Indian land is at issue, "the interests sought to be protected by Congress are the same, no matter who the plaintiff may be."

22

*Narragansett*, 418 F. Supp. at 806 (quoting *Capitan Grande Band of Mission Indians v. Helix Irr. Dist.*, 514 F.2d 465, 471 (9th Cir. 1975)). Yet as the United States points out, the district court's rule would thwart those interests, as it "would turn the checkerboard of [trust] landownership [in Indian country] into an impractical and unworkable checkerboard or jurisdiction." U.S. *Tesoro* Resp. at 22 n.16. Moreover, a distinction based on ownership conflicts with the statutory framework Congress adopted in the Indian Claims Limitation Act. That Act imposes a statute of limitations on certain Indian tort and contract claims. *Oneida II* found that Congress's decision to impose a time limit on such claims "presume[d] the existence of an Indian right of action." 470 U.S. at 244. And critically, one of the categories of claims recognized by Congress in the Act are "action[s] to recover damages resulting from a *trespass* on lands of the United States … *on behalf of an individual Indian whose land is held in trust*." 28 U.S.C. § 2415(b) (emphasis added). Congress thus confirmed that the federal common law provides a right to protect trust lands regardless of whether a tribe or an individual Indian is the beneficial owner.

Historical practice further rejects a distinction based on ownership. When Congress legislated to protect Indian lands in 1822, it prescribed a rule that applies to "all trials about the right of property, in which *Indians* shall be a party." Act of May 6, 1822, ch. 58, § 4, 3 Stat. 683 (codified at 25 U.S.C. § 194); *see Cohen's*

23

*Handbook* § 16.03[3][c] (noting this rule applies to trust allotments). This provision shows "Congress apparently contemplated suits by Indians asserting their property rights." *Oneida II*, 470 U.S. at 239. Likewise, some of the Supreme Court's earliest cases recognized individual Indians' right to bring federal common law actions in defense of their lands. *See Oneida II*, 470 U.S. at 235-36 & n.6. A distinction between individual-Indian-owned lands and tribal-owned lands has no grounding.

The district court nonetheless purported to find support in *Taylor v. Anderson*, 234 U.S. 74 (1914), and *Wolfchild v. Redwood County*, 824 F.3d 761 (8th Cir. 2016). App. 122-26; R. Doc. 139, at 10-14. But this Court already recognized that *Wolfchild* "does not directly control the issue in this case," for good reason. *Chase I*, 12 F.4th at 874. *Taylor* and *Wolfchild* concerned allotted *fee* lands. Unlike allotted *trust* lands, "[t]he federal government has not retained title to [fee] land or indicated that it is prepared to exert jurisdiction over the land." *Buzzard v. Okla. Tax Comm'n*, 992 F.2d 1073, 1076 (10th Cir. 1993). Nor is such land subject to the same "[s]uperintendency" and "active involvement of the federal government" that applies to trust allotments. *Id.* *Taylor* and *Wolfchild* thus have no relevance to suits involving trust lands—whether the beneficial owner is a tribe or individual Indian. The Individual Landowners can assert a federal trespass claim.

Appellate Case: 23-3019    Page: 37    Date Filed: 01/12/2024 Entry ID: 5353142

## II. THE INDIVIDUAL LANDOWNERS CAN BRING A FEDERAL ACTION FOR BREACH OF THE 1993 EASEMENT

The district court also erred in dismissing the Individual Landowners' claim for breach of the 1993 Easement. The Individual Landowners allege that Andeavor failed to comply with the terms of the 1993 Easement, which incorporated BIA regulations requiring Andeavor to "[r]estore the land to its original condition" and to "reclaim the land" upon the Easement's expiration. App. 63-64; R. Doc. 28, at 27-28 (¶¶ 130-136) (quoting 25 C.F.R. § 169.125(c)(5)(ix)). Below, Andeavor argued that this claim arises under state law and that the Individual Landowners cannot sue for breach because they are not parties to the easement. App. 75-77; R. Doc. 86, at 2-4. The district court accepted Andeavor's argument about lack privity of contract. App. 143-44; R. Doc. 139, at 31-32. It also held that the United States is an indispensable party to this claim. *Id.*

Andeavor and the district court are wrong in all respects. This Court has held that claims for breach of leases on federally held Indian trust land are governed by federal law. There is thus federal subject matter jurisdiction, and federal law determines whether the Individual Landowners are allowed to sue for breach of the 1993 Easement. Under *Poafpybitty*, because the United States may sue for breach, the Individual Landowners can as well. Further, the Individual Landowners can sue as third-party beneficiaries. And the United States is not an indispensable party to the claim (but if it were, it could be joined in any event).

25

## A. The Breach-of-Easement Claim Arises Under And Is Governed By Federal Law

Federal law applies to the Individual Landowners' breach-of-easement claim. To determine the law that governs a contract dispute involving an Indian tribe, courts look to the nature of the dispute. "[O]rdinary contract disputes involving Indian tribes" are governed by state law. *Gaming World Int'l, Ltd. v. White Earth Band of Chippewa Indians*, 317 F.3d 840, 847 (8th Cir. 2003). But disputes "raising issues in an area of extensive federal regulation" are subject to federal law. *Gaming World*, 317 F.3d at 847-48 (dispute over federal approval of contract in conformance with the Indian Gaming Regulatory Act arose under federal law).

This case concerns the latter. As this Court explained in a dispute over oil and gas leases, "[u]nlike 'routine contracts' that are 'governed by general common law principles of contract,' … leases on federally-held trust land are governed by federal law." *Kodiak Oil & Gas (USA) Inc. v. Burr*, 932 F.3d 1125, 1136 (8th Cir. 2019) (quoting *Comstock Oil & Gas Inc. v. Ala. & Coushatta Indian Tribes of Tex.*, 261 F.3d 567, 574 (5th Cir. 2001)); *see also, e.g.*, *Naegele Outdoor Advert. Co. v. Acting Sacramento Area Director, Bureau of Indian Affairs*, 24 IBIA 169, 177 (1993) ("[T]he construction of Federal contracts, including contracts approved on behalf of an Indian or Indian tribe by the Secretary of the Interior in his fiduciary capacity, is a question of Federal law."). That is so because such contracts implicate the unique federal interests and protections inherent in tribal trust lands. *Supra* 20-21. It also

26

stems from the "extensive regulatory scheme" that governs trust-land leases. *Comstock Oil*, 261 F.3d at 574-75 ("The federal regulations and statutes governing tribal oil and gas leases are adequate to invoke federal question jurisdiction…."); *see also, e.g.*, *Eagle Bear, Inc. v. Blackfeet Indian Nation*, No. CV-21-88, No. 2022 WL 4465000, at *3 (D. Mont. Sept. 26, 2022) ("[L]eases of tribal trust land are so comprehensively regulated by the federal government that their interpretation is a federal question." (quotation marks omitted)).

Examination of the easement and regulations here confirms that federal law governs. The 1993 Easement was issued pursuant to the Indian Right-of-Way Act and regulations promulgated thereunder, and it expressly incorporates those regulations. App. 89; R. Doc. 99-4, at 1 (term of 1993 Easement providing that it is issued "pursuant to the provision of the Act of February 5, 1948 (62 Stat. 17, 25 U.S.C. 323-328), and Part 169, Title 25, Code of Federal Regulations"). That alone is "highly probative" of whether a federal question exists. *Ariz. Pub. Serv. Co. v. Aspaas*, 77 F.3d 1128, 1133 (9th Cir. 1995); *see also Tenneco Oil Co. v. Sac & Fox Tribe of Indians of Okla.*, 725 F.2d 572, 575-76 (10th Cir. 1984) (federal jurisdiction "present" where lease was "made and accepted subject to … the regulations relative to such leases … prescribed by the Secretary of the Interior"). The applicable regulations, in turn, comprehensively govern the 1993 Easement and set its terms. *See* 25 C.F.R. § 169.125 (prescribing "[w]hat … the grant of right-of-way [will]

27

contain"). Indeed, the breach at issue is a violation of the terms set by regulation. App. 63-64; R. Doc. 28, at 27-28. The Individual Landowners' breach-of-easement claim accordingly arises under federal law. *See Gaming World Int'l*, 317 F.3d at 848.

Because the Individual Landowners' breach-of-easement claim arises under federal law, the district court possessed jurisdiction, *see id.* at 847, and federal law prescribes the legal standards that apply to the Individual Landowners' claim, including the test for whether the Individual Landowners may sue, *see Kodiak Oil*, 932 F.3d at 1136 ("[L]eases on federally-held Indian trust land are governed by federal law.").

## B. The Individual Landowners Are Entitled To Sue Under *Poafpybitty*

Under federal law, the Individual Landowners are entitled to assert a claim for breach of easement. As discussed above, *Poafpybitty* establishes that when the United States may assert a claim concerning Indian lands, the Indians may do so as well. *Supra* 15-18. Indeed, *Poafpybitty* concerned a lease of Indian lands. 390 U.S. at 367.

To be sure, in *Poafpybitty* the Indians themselves had executed the lease, whereas here the Individual Landowners are not named parties to the 1993 Easement. *See id.* But *Poafpybitty*'s logic extends broadly to all cases where the United States can sue to protect Indian land interests. *See id.* at 369 ("Th[e] dual

28

purpose of the allotment system would be frustrated unless both the Indian and the United States were empowered to seek judicial relief to protect the allotment."). Moreover, even if it in some cases it matters whether the Individual Indians are named parties, it does not here, because the Individual Landowners functionally *are* parties to the 1993 Easement. The 1993 Easement concerns *their* lands. It required *their* approval (or the United States' agreement *on their behalf* in limited circumstances *when the United States as trustee concludes it is in their best interests*). 25 U.S.C. § 324. And any damages for breach of the easement flow to *them*. *See id.* § 325. They thus can sue for breach of the easement agreement under *Poafpybitty*.

### C. The Individual Landowners Are Also Entitled To Sue As Third-Party Beneficiaries To The 1993 Easement

In addition to being able to sue under *Poafpybitty*, the Individual Landowners can sue as third-party beneficiaries because the 1993 Easement was intended to benefit them. Federal law recognizes the right of third-party beneficiaries to sue for breach of contract. *Audio Odyssey, Ltd. v. United States*, 255 F.3d 512, 520 (8th Cir. 2001); *see also, e.g.*, *Hebah v. United States*, 428 F.2d 1334, 1339 (Ct. Cl. 1970) ("It is settled[] … that an intended third-party beneficiary of a government contract may sue…."). "The proper test for determining third-party beneficiary status" under federal law "is whether the contract reflects the express or implied intention of the parties to benefit the third party." 255 F.3d at 521 (quotation marks omitted). "The

29

intended beneficiary need not be specifically or individually identified in the contract," so long as he "fall[s] within a class clearly intended to be benefitted thereby." *Id.* (quotation marks omitted).

This test is satisfied. The United States here executed the 1993 Easement as the Individual Landowners' trustee, and a trust beneficiary is always the beneficiary of a contract made by the trustee regarding the trust property. *See Bowen v. United States Postal Service*, 459 U.S. 212, 243 (1983) (White, J., concurring in part) (noting that "a trust beneficiary may sue to enforce a contract entered into on his behalf by the trustee" when the trustee fails to). In fact, the BIA can *only* approve easements across the Individual Landowners' lands when it is for their benefit; both the general trust responsibility and statute and regulation require nothing less. *See United States v. Sioux Nation of Indians*, 448 U.S. 371, 408-09, 416 (1980) (United States must act for the benefit of the Indians with respect to their property, or else it effects a taking); *infra* 31-32 (discussing the statutory and regulatory framework). "[T]he underlying purpose of the contract[]," therefore, is to benefit the Individual Landowners, allowing them to sue for its breach. *Audio Odyssey*, 255 F.3d at 521.

Context confirms that the Individual Landowners are intended beneficiaries. "[W]hen, as here, the contract implements a statutory enactment, it is appropriate to inquire into the governing statute [and regulations] and [their] purpose." *Roedler v. Dep't of Energy*, 255 F.3d 1347, 1352 (Fed. Cir. 2001); *see also, e.g., Busby Sch. of*

30

*N. Cheyenne Tribe v. United States*, 8 Cl. Ct. 596, 602 (1985) (explaining that a court considers statutes, regulations, and policy in determining whether plaintiffs are third-party beneficiaries). The Indian Right-of-Way Act and Interior regulations leave no doubt that easements crossing lands held in trust for individual Indians—including the 1993 Easement, which incorporates these provisions, *supra* 27—must benefit the Indian landowners.

To begin, by default such easements require the Indian landowners' consent. 25 U.S.C. § 324. When their consent is impractical to obtain, the Secretary may consent on their behalf, but the Secretary must find that the easement will "cause no substantial injury to the land or any owner thereof," *id.*, and that "all of the landowners will be adequately compensated for consideration and any damages that may arise from [the] grant," 25 C.F.R. § 169.107(b)(1)(iii). Compensation for the easement is "received on behalf of the Indian [land]owners," 25 U.S.C. § 325, if not provided to them directly, 25 C.F.R. § 169.116(b)(3). And the compensation received for the Indian Landowners must be "just." 25 U.S.C. § 325; *see also* 25 C.F.R. § 169.112. Repeatedly, Interior regulations instruct Interior to act in the Indian landowners' interests. *E.g.*, 25 C.F.R. § 169.1(a); *id.* § 169.402(a)(2); *id.*

31

§ 169.118.[6]  These provisions demonstrate that the 1993 Easement was intended to benefit the Individual Landowners.

The Indian canon of construction bolsters this conclusion.  "Native Americans are entitled to the benefit of the doubt if legislation is ambiguous." *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 548 (8th Cir. 1996); *see also Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1332 (10th Cir. 1982) (applying the same rule to regulations).  Here, the intent to render the Individual Landowners third-party beneficiaries is clear, but even were that not so, any ambiguity would have to be resolved in the Individual Landowners' favor.

Cases involving similar agreements benefitting Indians are in accord.  In *Hebah v. United States*, the Court of Claims allowed an individual Indian to recover under a treaty that obligated the United States to reimburse Indians for the acts of "bad men among the whites."  428 F.2d at 1335 (quoting Treaty of July 3, 1868, 15 Stat. 673).  Though individual Indians were not parties to the treaty, the court concluded that "the Federal Government's promise of redress and reimbursement manifest[ed] an intention to give those benefits to the 'injured person' himself, directly."  *Id.* at 1338.  The Indian canon, moreover, supported a "liberal

---

[6] Of course, Interior often fails to live up to its obligation to serve the best interests of Indian landowners—and indeed has so failed here.  *Infra* 47-49.  But that does not change the fact that Indian Right-of-Way Act easements are intended to benefit Indian landowners.

32

interpretation" of the treaty. *Id.* Thus, the individual Indian could sue. Likewise in *Busby School of Northern Cheyenne Tribe v. United States*, the Court of Claims determined that individual Indians were third-party beneficiaries to contracts between a school board and the BIA. 8 Cl. Ct. at 602. The Court of Claims deemed such intent manifest in "the pertinent statutes and regulations and the underlying policy behind the contracts and applicable statutes and regulations of providing Indian children on Indian reservation with an education." *Id.* And it found key that "[w]hen the contracts were allegedly breached [the individual Indians] suffered the loss." *Id.* This case is the same. *See also Holbrook v. Pitt*, 643 F.2d 1261, 1271-72 (7th Cir. 1981) (low-income tenants were third-party beneficiaries to government contract where purpose of underlying statute was to provide rent subsidies and criteria for entering into contracts focused on tenants' financial needs).

In rejecting this third-party beneficiary argument, the district court relied on indispensable-party cases. App. 144-45; R. Doc. 139, at 32-33. The United States is not an indispensable party, as explained below. *Infra* 33-41. But even more fundamentally, indispensable-party cases are irrelevant to the third-party-beneficiary inquiry. The district court's analysis thus casts no doubt on the

33

conclusion that the Individual Landowners can sue as third-party beneficiaries under federal law.[7]

### D. The United States Is Not An Indispensable Party To The Breach-Of-Easement Claim, And Can Be Joined Regardless

The Individual Landowners' breach-of-easement claim may proceed without the United States. "Determining whether a non-party is an indispensable party is a two-step process" governed by Federal Rule of Civil Procedure 19. *Sorenson v. Sorenson*, 64 F.4th 969, 975 (8th Cir. 2023). "First, the court must determine whether the non-joined party is a 'required' (necessary) party under Rule 19(a)(1)." *Id.* (quoting Fed. R. Civ. P. 19(a)(1)). "If the non-party is necessary under Rule 19(a)(1)" and cannot be joined, the court then "'determine[s] whether, in equity and good conscience,' the action should proceed or be dismissed." *Id.* (quoting Fed. R. Civ. P. 19(b)).

Here, the United States is not a required party because the Individual Landowners' breach-of-easement claim does not threaten the United States' interests. If, however, the United States were required, it could be joined. And even

---

[7] Even under North Dakota law, the result would be the same. *See United States v. Dairyland Ins. Co.*, 674 F.2d 750, 752 (8th Cir. 1982) (recognizing that North Dakota law uses the "'intent to benefit' test" that allows courts to "enforce the contract on … behalf [of a third party]" whenever "there was an intent by the parties to benefit [the] third person").

34

if the United States were required *and* could not be joined, equity and good conscience would require allowing this suit to proceed.

### 1. The Individual Landowners' Breach-of-Easement Claim Against Andeavor Does Not Threaten the United States' Interests

Under Rule 19(a), a non-party is "required" when it "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may … as a practical matter impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B)(i).[8] This rule is not triggered here. The Individual Landowners' breach-of-easement claims targets only Andeavor and its failure to comply with the terms of the 1993 Easement. App. 63-64; R. Doc. 28, at 27-28 (¶¶ 130-136) (quoting 25 C.F.R. § 169.125(c)(5)(ix)). Such a claim does not put at risk any interest of the United States. Just the opposite, Plaintiffs' suit would have the collateral impact of *vindicating* the United States' interests by ensuring compliance with federal regulations and the federally approved, 1993 Easement that incorporates them. *Cf. Poarch Band of Creek Indians v. Hildreth*, 656 F. App'x 934, 944 (11th Cir. 2016) (per curiam) ("[E]nforcing the

---

[8] A non-party is also required when (1) "in [the non-party's] absence, the court cannot accord complete relief among existing parties" or (2) "disposing of the action in the [non-party's] absence may … leave an existing party subject to a substantial risk of incurring … inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(A), (B)(ii). Neither situation is present here. *See Davilla v. Enable Midstream Partners, L.P.*, No. CIV-15-1262, 2016 WL 4440240, at *2 (W.D. Okla. Aug. 19, 2016) (reaching this conclusion in Indian-allottee suit against alleged trespassers); *Bird Bear*, 513 F.2d at 191 n.6 (similar).

Appellate Case: 23-3019     Page: 48     Date Filed: 01/12/2024 Entry ID: 5353142

existing federal statutory and regulatory structure applicable to Indian tribes … serve[s] the public interest."). The United States is thus not a required party.

That conclusion comports with this Court's precedents. True, in *Chase I* this Court noted that "[i]n a breach-of-contract action involving a right-of-way over individual trust allotments, the United States, as grantor, is an indispensable party." 12 F.4th at 878. That statement reflected the general rule that the United States is indispensable "in … action[s] which involve[] alienation or condemnation of Indian property." *Cheyenne River Sioux Tribe of Indians v. United States*, 338 F.2d 906, 909 (8th Cir. 1964). But this Court has "reject[ed] the notion that the United States is an indispensable party to every case involving a dispute over Indian lands." *Spirit Lake Tribe v. North Dakota*, 262 F.3d 732, 747 n.6 (8th Cir. 2001), *abrogated on other grounds by Wilkins v. United States*, 598 U.S. 152 (2023). Rather, in cases where litigation is instituted "by individual Indians or a tribe seeking to protect Indian land," the general rule is flipped, and such suits are allowed to proceed without the United States. *Puyallup Indian Tribe v. Port of Tacoma*, 717 F.2d 1251, 1255 & n.1 (9th Cir. 1983); *see also, e.g.*, 7 Charles Alan Wright et al., *Federal Practice and Procedure* § 1617 (3d ed. 2019) (explaining that in Indian-lands cases "the courts have found … that the government is not required to be joined" so long as "a decree may be entered that would not injure the interests of the United States").

36

This Court has thus allowed tribal parties to vindicate their interests in Indian lands without joining the United States. In *Bird Bear*, this Court considered a case just like this one: an Indian-allottee suit concerning rights-of-way that allegedly trespassed over Indian trust land without a valid easement. 513 F.2d at 190-91. On appeal, the alleged trespassers contended that the United States was an indispensable party. *Id.* at 191 n.6. This Court, however, rejected the claim that the United States had to be joined before the allottees could seek to enforce their rights. *See id.* at 191. Other courts have reached the same conclusion. *E.g.*, *Davilla v. Enable Midstream Partners, L.P.*, No. CIV-15-1262-M, 2016 WL 4440240, at *2 (W.D. Okla. Aug. 19, 2016) (collecting authorities); *Lyon v. Gila River Indian Cmty.*, 626 F.3d 1059, 1069 (9th Cir. 2010); *Jackson v. Sims,* 201 F.2d 259, 262 (10th Cir. 1953).

In finding that the United States is not a required party, this Court and others follow *Poafpybitty*. *See Houle v. Cent. Power Elec. Co-op., Inc.*, No. 4:09-CV-021, 2011 WL 1464918, at *25 (D.N.D. Mar. 24, 2011) (explaining that "the prevailing view in the Eighth Circuit and elsewhere" derives "[i]n substantial part because of what the Supreme Court decided in case[s] like '*Poafpybitty*'"); *Red Lake Band of Chippewas v. City of Baudette*, 730 F. Supp. 972, 979 (D. Minn. 1990) (similar). As noted, *Poafpybitty*, just like this case, was a suit by individual allottees for breach of a lease for use of their trust lands, and the Court recognized that the allottees had capacity to sue on their own behalf. 390 U.S. at 366, 373-74. The necessary

37

corollary is that the United States is not a required party to such a suit. Otherwise, the rule that "Indians … have capacity to prosecute or defend an action with respect to their lands would be of no avail to them, if the United States is an indispensable party to such an action." *Seitz*, 193 F.2d at 460.

The conclusion that the United States is not a necessary party also follows from the general rule that "there is no requirement that all parties to a contract be joined in an action brought by a third-party beneficiary." *Hargrove v. Underwriters at Lloyd's, London*, 937 F. Supp. 595, 607 n.9 (S.D. Tex. 1996); *see also, e.g.*, 7 Wright et al. § 1613 (noting "uniform[ity]" on this point). In *Sandobal v. Armour & Co.*, 429 F.2d 249 (8th Cir. 1970), for example, this Court held that when an employee sued his employer for breach of a collective-bargaining agreement between the employee's union and the employer, the suit could proceed in the union's absence. *Id.* at 257-58. The union was not an indispensable party because "[a] decision awarding judgment to the plaintiff would in no respect affect any rights of the Union." *Id.* The same is true here as to the rights of the United States.

The cases this Court cited in *Chase I* are not to the contrary. *See* 12 F.4th at 878. *Cheyenne River Sioux Tribe of Indians v. United States*, 338 F.2d 906 (8th Cir. 1964), concerned a condemnation initiated *by the United States*, and the question was whether *the tribe* was an indispensable party (it was not). *Id.* at 908, 910. *Minnesota v. United States*, 305 U.S. 382 (1939), meanwhile, was an action that

38

sought to alienate and take title to trust lands. *See id.* at 383. Unlike *Minnesota*, this is an action "to *protect*, not alienate, Indian trust lands." *Barber v. Simpson*, No. 05-CV-2326, 2006 WL 1867643, at *4 (E.D. Cal. July 6, 2006) (emphasis added), *aff'd*, 286 F. App'x 969 (9th Cir. 2008); *see Seitz*, 193 F.2d at 460 (distinguishing *Minnesota* on this basis).

*Two Shields v. Wilkinson*, 790 F.3d 791 (8th Cir. 2015), cited by the district court, is also easily distinguished. *See* App. 145; R. Doc. 139, at 33. There, similar to here, individual Indian allottees brought claims concerning leases of their trust lands. *Two Shields*, 790 F.3d at 792-93. But unlike here, the plaintiffs argued that *the United States* had acted illegally—that it had breached its fiduciary duty by approving the leases. *Id.* at 793. *That* aspect of the claim threatened the United States' interests and rendered the United States a required party. *See id.* (explaining that "whether the United States has acted illegally … 'cannot be tried behind its back'" (quoting *Nichols v. Rysavy*, 809 F.2d 1317, 1333 (8th Cir. 1987))). Here, by contrast, the Individual Landowners' breach-of-easement claim concerns only the illegality of Andeavor's actions. The United States is not required.

### 2. Were It Required, The United States Could Be Joined

Even if the United States were a required party, it could be joined. By default, the United States is immune from suit. But when *the United States* files a claim, it waives its immunity as to other claims arising from the same transaction or

Appellate Case: 23-3019    Page: 52    Date Filed: 01/12/2024 Entry ID: 5353142

occurrence. *See United States v. Baden Plaza Assocs.*, 826 F. Supp. 294, 298 (E.D. Mo. 1993). Here, the United States has filed in *Tesoro* a trespass claim based on the same conduct that underlies this breach-of-easement claim. The United States, therefore, could be joined if it were a required party.

Indeed, this is why it was appropriate to consolidate, as the district court initially suggested and to which the United States was amenable. *See* App. 85-87; Joint Status Report at 6, *Tesoro* (Aug. 26, 2022), R. Doc. 48. The United States is already a party to a suit presenting the questions raised by the Individual Landowners' claims, including their easement claim. Thus, even if the United States were a required party, the district court would be fully apprised of the United States' views before it issued any decision that could impact the United States' interests.

### 3. Even If The United States Were A Required Party And Could Not Be Joined, The Rule 19(b) Factors Would Require Allowing This Case To Proceed

Rule 19(a) is not the end of the indispensable-party inquiry. When a party is deemed required under Rule 19(a) and cannot be joined, "equity and good conscience" may still require a suit to proceed. Fed. R. Civ. P. 19(b). Here, equity and good conscience compel allowing the Individual Landowners to assert their breach-of-easement claim even if the United States is a required party.

"[T]he rule is clear … that, in a suit by [Indians] to protect [their] interest in tribal lands, regardless of whether the United States is a necessary party under Rule

40

19(a), it is *not* an indispensable party in whose absence litigation cannot proceed under Rule 19(b)." *Puyallup*, 717 F.2d at 1254 (emphasis in original). Again, the key is that the relief sought would "protect[]—not cloud[]—the United States' [interests]." *Gila River Indian Cmty. v. Winkelman*, No. CV 05-1934, 2006 WL 1418079, at *4 (D. Ariz. May 22, 2006); *see also, e.g.*, *Picuris Pueblo v. Oglebay Norton Co.*, 228 F.R.D. 665, 667-68 (D.N.M. 2005) (deeming United States not to be a required party to action to establish tribal interests in land because the tribe had no other route forward, the defendant was not at risk of multiple liability, and the United States would not be bound by the outcome). Because the Individual Landowners' breach-of-easement claim falls into the category of suits allowed to proceed in the United States' absence, the district court wrongly ordered dismissal.

## III. THE INDIVIDUAL LANDOWNERS CAN BRING A CLAIM FOR UNJUST ENRICHMENT

The Individual Landowners have stated a claim for unjust enrichment. Federal common law allows Indians to assert equitable claims in the event of a trespass on their lands. *See Oneida II*, 470 U.S. at 235-36 ("Indians have a common-law right of action for an accounting of 'all rents, issues and profits' against trespassers on their land." (quoting *Santa Fe Pacific*, 314 U.S. at 344)). And under North Dakota law—applicable here as borrowed to the extent it comports with federal policy, *Davilla*, 913 F.3d at 965—the elements of an unjust enrichment claim are: "(1) an enrichment; (2) an impoverishment; (3) a connection between the

41

enrichment and the impoverishment; (4) absence of a justification for the enrichment and impoverishment; and (5) an absence of a remedy provided by law." *Lochthowe v. C.F. Peterson Estate*, 692 N.W.2d 120, 124 (N.D. 2005). The Individual Landowners have satisfied those elements because they allege that Andeavor has been "unjustly enriched" by obtaining or securing benefits—in the form of "substantial revenues and profits"—from the use of the Individual Landowners' land while simultaneously "depriving Plaintiffs of compensation" and "avoiding the costs" of removing and rerouting the pipeline. App. 64-65; R. Doc. 28, at 28-29 (¶¶ 138-145).

The district court did not engage with this analysis. Instead, it maintained that the Individual Landowners "conceded" that their unjust enrichment claim "hinge[s] on the success of their request for a federal common law claim of trespass" because their complaint "alleg[es] the unjust enrichment claim arises from the 'Defendant's enrichment and Plaintiffs' impoverishment through Defendants' trespass.'" App. 145; R. Doc. 139, at 33 (quoting App. 65; R. Doc. 28, at 29). That is wrong because the Individual Landowners *do* have a federal cause of action for trespass, and in turn have stated an unjust enrichment claim even under the district court's logic. *Supra* 10-24. But regardless, the Individual Landowners made no such concession. Rather, Andeavor's trespass gives rise to two *independent* causes of action—one for the tort named "trespass" and one for unjust enrichment. Indeed, *Oneida II* makes clear that

42

a trespass gives rise to more than just a "trespass" claim, as it recognized that "Indians have a common-law right of action for *an accounting* … against *trespassers* on their land." 470 U.S. at 235-36 (emphases added). Accordingly, the district court erred in dismissing the unjust enrichment claim.

## IV. THE DISTRICT COURT ERRED IN DENYING INTERVENTION AND IGNORING CONSOLIDATION

The district court also erred in (1) denying the Individual Landowners' motion to intervene in *Tesoro* and (2) not granting their request to consolidate the two cases. The Individual Landowners are entitled to intervene as of right in the *Tesoro* action, and even if they are not, the district court abused its discretion by denying the Individual Landowners permissive intervention in a case about their interests. Likewise, the district court abused its discretion and prevented meaningful appellate review by failing to decide the Individual Landowners' request to consolidate the two cases. This Court should thus reverse and remand with instructions to grant the Individual Landowners' motion to intervene. In the alternative, it should remand and direct the district court to decide the Individual Landowners' request to consolidate.

### A. The Individual Landowners Are Entitled To Intervene In *Tesoro*

The district court erred in denying the Individual Landowners' motion to intervene as of right. An applicant who seeks timely intervention under Federal Rule of Civil Procedure 24(a) is entitled to intervene when "the applicant … satisf[ies] a

43

tripartite test: 1) the party must have a recognized interest in the subject matter of the litigation; 2) that interest must be one that might be impaired by the disposition of the litigation; and 3) the interest must not be adequately protected by the existing parties." *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 997 (8th Cir. 1993). These Rule 24 requirements are liberally construed, with "doubts resolved in favor of the proposed intervenor[s]." *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999). All three are satisfied here.

### 1. The Individual Landowners Have A Recognized Interest That May Be Impaired

Below, the district court assumed that the Individual Landowners meet the first two factors for intervention as of right in *Tesoro*. App. 147; R. Doc. 139, at 35. It was right to do so.

The Individual Landowners' interests are central to the *Tesoro* suit. Tesoro's claims seek to set aside the BIA's administrative decision, which vacated the previous trespass damages award and directed the relevant regional director to address Tesoro's trespass. *See generally Tesoro* Compl. The BIA's Decision plainly implicated the Individual Landowners' property and financial interests, and so too does Tesoro's attack on that decision. *See Nat'l Parks Conservation Ass'n v. U.S. EPA*, 759 F.3d 969, 976 (8th Cir. 2014) (recognizing that financial stake in litigation is a protected interested under Rule 24). Moreover, the United States' *Tesoro* trespass counterclaim is the same claim that the Individual Landowners press here.

44

*See* App. 102-04; R. Doc. 115, at 1-3 (chart showing that the claim and relief sought are identical in both cases). Though the United States' trespass counterclaim has since been stayed, that was not the case when the district court denied the Individual Landowners' motion, and even now the counterclaim remains pending under the *Tesoro* docket. *See Tesoro* Stay Order. The Individual Landowners' interests are therefore at stake in *Tesoro*, and any decision there will impact those interests. *Cf. Mille Lacs*, 989 F.2d at 997-98 (landowners had requisite interest in litigation that would determine tribal rights on their lands and could impact their property values).

### 2. The United States Does Not Adequately Protect The Individual Landowners' Interests

The Individual Landowners also satisfy the third requirement to intervene as of right, as the United States does not adequately represent their interests. The district court held otherwise, contending that the United States is presumptively an adequate representative of the Individual Landowners' interests and that the Individual Landowners failed to overcome that presumption. App. 147-48; R. Doc. 139, at 35-36. Both propositions are wrong.

### a. No Presumption of Adequacy Applies

The district court erred by presuming the United States adequately represents the Individual Landowners' interests in *Tesoro*. When a government is an existing party, a presumption of adequacy can apply if the interests of those seeking intervention are "concerns that the Government, as *parens patriae*, is charged with

45

protecting." *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996). But there are two key exceptions to this rule. First, the presumption does not apply to cases where the intervenors' interests are narrower than the government's sovereign interest. *Id.*; *see also, e.g.*, *Mille Lacs*, 989 F.2d at 1001 (*parens patriae* presumption did not apply because the property owners' "interests in land [were] narrower interests not subsumed in the general interest Minnesota assert[ed] in protecting fish and game"). Second, the presumption does not apply when the United States must satisfy competing statutory requirements. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538-39 (1972); *see United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 987 (2d Cir. 1984) (noting "only a 'minimal' burden to show inadequate representation" when there are "conflicting statutory obligations").

Both exceptions apply here. To start, the Individual Landowners' interests differ from the United States'. To be sure, the Individual Landowners and the United States "share an interest in the ultimate outcome of [*Tesoro*]"—*i.e.*, in seeing the BIA's most recent decision upheld. *Klamath Irrigation District v. U.S. Bureau of Reclamation*, 48 F.4th 934, 945 (9th Cir. 2022), *cert. denied*, 144 S. Ct. 342 (2023). But they do so "for very different reasons." *Id.* "[A]lthough [the United States] ha[s] an interest in defending [its] analyses," its "overriding interest … must be in complying with" federal law. *Dine Citizens Against Ruining Our Env't v. BIA*, 932 F.3d 843, 855 (9th Cir. 2019). It "do[es] not share an interest in the *outcome* of [its

46

decision].” *Id.* (emphasis in original).  As a result, no presumption of adequacy applies.  *See id.* at 855-56; *Klamath Irrigation*, 48 F.4th at 945; *see also Bettor Racing, Inc. v. NIGC*, No. CIV. 13-4051, 2013 WL 5954418, at *6 (D.S.D. Nov. 6, 2013) (tribe was not adequately represented by the National Indian Gaming Commission (“NIGC”) because the NIGC’s interest was in “upholding its administrative decision” while the tribe was “interested in preserving parts of that decision for a different purpose”).

The United States is also subject to competing statutory obligations in *Tesoro*.  It owes a trust duty to the Individual Landowners.  25 U.S.C. § 175.  It owes a separate trust duty to the Tribe.  *Id.*; *see also Wichita & Affiliated Tribes of Okla. v. Hodel*, 788 F.2d 765, 775 (D.C. Cir. 1986) (joined by Scalia, J.) (United States’ representation is inadequate when “whatever allegiance the government owes … as trustee, is necessarily split among” competing tribal interests).  And it is obligated to defend claims brought against itself—including any breach-of-trust claim Indian landowners might bring after these cases conclude.  *See* 28 U.S.C. §§ 516, 547(b).  The latter duty has particular salience here:  Some landowners have stated they intend to sue the United States for breach of trust based on its failure to timely address Andeavor’s trespass, and the damages award that Andeavor must pay in *Tesoro* could impact the damages award the United States would pay in any

47

subsequent breach-of-trust suit.  *See* Mot. to Intervene at 5, 12, 14, *Tesoro* (Nov. 6, 2023), R. Doc. 70.

For these reasons, no presumption of adequacy applies, and the Individual Landowners need only meet the "minimal" burden of showing "that representation of [their] interests 'may be' inadequate."  *Trbovich*, 404 U.S. at 538 n.10.

### b.  <u>The Individual Landowners Have Met Any Applicable Burden</u>

No matter the burden that applies here, the Individual Landowners have met it, as the United States fails to adequately protect the Individual Landowners' interests twice over.

First off, the United States will not "undoubtedly make all of [the Individual Landowners'] arguments."  *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).  The position of the Individual Landowners is that their damages cannot be determined in an administrative proceeding.   The United States, by contrast, has twice purported to administratively issue trespass damage awards.  The distance between those positions renders the United States' representation inadequate.

The United States' previous attempt to settle *Tesoro* likewise shows that the United States is an inadequate protector of Indian landowners' interests.  *See Mille Lacs*, 989 F.2d at 1001 (finding government representation inadequate where interests could "diverge substantially" "if the case [were] disposed of by settlement rather than by litigation").  As another group of landowners has documented, in July

48

2022, the BIA sent to the Indian landowners a proposed agreement with *Tesoro* that it negotiated without any landowner consultation. Mot. to Intervene at 5, *Tesoro*. The other group of landowners explain that the United States structured the proposed settlement to absolve *it* of any potential liability for breach of trust. *Id.* at 6.

Such a settlement cannot be squared with a commitment to protecting the Individual Landowners' interests. If anything, it suggests adversity toward impacted Indian landowners. Hence, by committing this "clear dereliction of duty," the United States has revealed it is not an adequate representative under Rule 24(a). *Stenehjem*, 787 F.3d at 922 (quotation marks omitted); *cf. Bettor Racing*, 2013 WL 5954418, at *6 (tribe's "narrow financial interest" not adequately represented by NIGC where NIGC "upheld the civil fine against plaintiffs but found that the fine supplanted the nearly $3.5 million still owed by Bettor Racing to the Tribe under the initial NIGC decision"). The Individual Landowners are entitled to intervene in *Tesoro*.

## B. The District Court Abused Its Discretion In Denying Permissive Intervention

The district court also was required to grant the Individual Landowners' motion for permissive intervention. Under Rule 24(b), a court may "permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Like Rule 24(a), Rule 24(b) is construed liberally. *Turn Key Gaming*, 164 F.3d at 1081. This Court

49

reverses a denial of permissive intervention when the district court abused its discretion. *Coffey*, 663 F.3d at 951. That occurs when, for example, the district court "fail[s] to 'articulate a legitimate reason for denying the Rule 24(b) motion'" or "makes an error of law." *Id.* (cleaned up) (quoting *South Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787-88 (8th Cir. 2003)).

The district court abused its discretion here. As the Supreme Court has explained, in suits where the United States acts as Indians' representative and can possibly bind them to a judgment, "it is obvious that the [Indians], at a minimum, satisfy the standards for permissive intervention." *Arizona v. California*, 460 U.S. 605, 614-15 (1983), *decision supplemented*, 466 U.S. 144 (1984). There is thus little room for a district court to rule otherwise.

The district court's rationales for denying permissive intervention certainly did not justify deviation from the rule that Indians may intervene in these types of suits. First, the district court deemed intervention inappropriate because it concluded the Individual Landowners lack a trespass cause of action. App. 149; R. Doc. 139, at 37. But that was wrong. *Supra* 11-24. And in any event, Rule 24(b) allows intervention when "a claim *or* defense … shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B) (emphasis added). The district court elsewhere has opined that "*defenses* [available to Indian landowners] may share some common questions of fact and possibly of law." Order Denying Motion

50

to Intervene at 10, *Tesoro* (Aug. 8, 2023), R. Doc. 67 (emphasis added). This rationale thus withers under scrutiny.

Second, the district court reasoned that permissive intervention would "sidetrack" *Tesoro*. App. 150; R. Doc. 139, at 38. The district court, however, has since stayed the United States' trespass counterclaim, *Tesoro* Stay Order at 3-5; the parties have agreed to postpone resolution of Tesoro's preliminary-injunction motion for nearly two years, *see* Joint Request to Abstain from Ruling, *Tesoro* (Mar. 7, 2022), R. Doc. 38; and no other motion is pending. There is, simply put, nothing to sidetrack.

Third, the district court maintained that permissive intervention should be denied because the United States adequately represents the Individual Landowners' interests. App. 150; R. Doc. 139, at 38. For the reasons explained, the United States is not, in fact, an adequate representative. *Supra* 45-49. But more fundamentally, denying permissive intervention on this ground runs directly contrary to *Arizona* and *Poafpybitty*. "[T]he Indians are entitled 'to take their place as independent qualified members of the modern body politic.'" *Arizona*, 460 U.S. at 615 (quoting *Poafpybitty*, 390 U.S. at 369). And "Indians' participation in litigation critical to their welfare should not be discouraged." *Id.* Yet the district court closed the door on the Individual Landowners at every turn. It accordingly abused its discretion when it denied their motion to permissively intervene in *Tesoro*.

51

## C. The District Court Abused Its Discretion And Prevented Meaningful Appellate Review By Failing to Address Consolidation

In the alternative, this Court should remand and require the district court to resolve the Individual Landowners' request to consolidate this case with *Tesoro*. This issue was raised repeatedly below by both the Individual Landowners and the district court itself. *Supra* 7. The district court's final order, however, never decided consolidation. *Id.* This was error that requires remand twice over.

First, the district court abused its discretion by refusing to address consolidation. A district court has "broad discretion in ordering the consolidation of matters." *Enter. Bank*, 21 F.3d at 235. But that discretion "is not unbounded." *Id.* At minimum, the district court must *exercise* its discretion when a party seeks consolidation. *E.g.*, *United States v. Rogers*, 448 F.3d 1033, 1035 (8th Cir. 2006); *Leonard v. Sw. Bell Corp. Disability Income Plan*, 408 F.3d 528, 533 (8th Cir. 2005). The district court did not do so here, and remand is therefore required. *See Invs. Rsch. Co. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989) (ordering district court that "never exercised its discretion on [a] motion to consolidate" to answer mandamus petition); *Pettit v. Boeing Co.*, 606 F.3d 340, 342, 344 (7th Cir. 2010) (directing district court to rule on motion to consolidate promptly on remand).

Second, the district court thwarted meaningful appellate review. A district court "is obliged to articulate its reasoning in order to permit [this Court] to review

52

its decision." *United States v. Elmardoudi*, 501 F.3d 935, 941 (8th Cir. 2007). Yet here, the district court failed to provide even "a brief explanation" of its decision, preventing this Court from "discern[ing] how the [district] court exercised its discretion." *United States v. Fortenberry*, 840 F. App'x 64 (8th Cir. 2021) (per curiam). Because the district court did not "articulate reasons to enable suitable review of its holding," remand is required so that this Court may "determine whether the district court considered and properly weighed all the legally relevant [considerations]." *DeShane v. Deere & Co.*, 726 F.2d 443, 446 (8th Cir. 1984).

## CONCLUSION

The district court's decision should be reversed.

Respectfully submitted this 11th day of January 2024.

Dustin T. Greene
KILPATRICK TOWNSEND &
STOCKTON LLP
1001 W. 4th Street
Winston-Salem, NC 27101
Telephone: (336) 607-7300
Email: dgreene@ktslaw.com

*/s/ Keith M. Harper*
Keith M. Harper
Leonard R. Powell
Krystalyn Kinsel
JENNER & BLOCK LLP
1099 New York Ave. NW
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Email: kharper@jenner.com

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 12,979 words, excluding those parts of the motion exempted by Fed. R. App. P. 27(a)(2)(B) and Fed. R. App. P. 32(f).

This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface of 14 points or more using Microsoft Word 365.

This motion has been scanned for viruses pursuant to Eighth Circuit Local Rule 28A(h)(2) and is virus-free.

s/ *Keith M. Harper*
Keith M. Harper

Appellate Case: 23-3019     Page: 67     Date Filed: 01/12/2024 Entry ID: 5353142

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system on January 11, 2024.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

<u>s/ *Keith M. Harper*</u>
Keith M. Harper

Appellate Case: 23-3019    Page: 68    Date Filed: 01/12/2024 Entry ID: 5353142